IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAKE W. GRAHAM,<br><br>                              Plaintiff,<br><br>     vs.<br><br>PRUDENTIAL PROTECTIVE SERVICES,<br>LLC., a Michigan limited liability corporation,<br>PRUDENTIAL DEFENSE SOLUTIONS, INC., a<br>Delaware corporation, PRUDENTIAL<br>SECURITY, INC., a Michigan corporation,<br>PATRICK KAKOS, individually, PATRICIA<br>GUZIK, individually, GREG WIER, individually,<br>and MATTHEW KEYWELL, individually.<br><br>                            Defendants, | No. |

## COMPLAINT

NOW COMES Plaintiff, JAKE W. GRAHAM, by and through his attorneys, Lisa M. Stauff, of the Law Offices of Lisa M. Stauff, and John A. Krupa, of the Law Office of John A. Krupa & Associates, and in support of his Complaint, states as follows:

### NATURE OF THE CASE

1. This is a whistleblower retaliation action under federal and Illinois law. Defendants fired Plaintiff, Jake W. Graham, in retaliation for Mr. Graham's persistent refusal to ignore, refusal to participate in, and stated promise to report, Defendants' unlawful business practices, including but not limited to Mr. Graham's reasonable belief Defendants' invoicing of the United States government intentionally induced payment for services Defendants knowingly did not provide.

1

2. Mr. Graham brings claims pursuant to the anti-retaliation provision of the False Claims Act, 31 U.S.C. §3730(h), the Illinois Whistleblower Act, 740 ILCS 174/15-20.1, and common law retaliatory discharge, to seek redress for harms caused by Defendants' unlawful retaliation.

3. Additionally, Mr. Graham asserts violations of the Illinois Wage Payment and Protection Act, 820 ILCS 115/1 *et seq.,* and seeks redress for breach of contract and tortious interference with a contract under Illinois common law.

## THE PARTIES

4. Plaintiff, Jake W. Graham, is a resident of the city of Chicago, and at all times relevant to this Complaint, performed his job duties for Defendants at Defendants' office in the city of Chicago.

5. Defendant, Prudential Protective Services, LLC ("Prudential Protective"), is a Michigan limited liability corporation conducting business in the Chicago-area and throughout Illinois.

6. Defendant, Prudential Security, Inc. ("Prudential Security"), is a Michigan corporation conducting business in the Chicago-area and throughout Illinois.

7. Defendant, Prudential Defense Solutions, Inc. ("Prudential Defense"), is a Delaware corporation with its principal place of business in Michigan. Prudential Defense conducts business in the Chicago-area and throughout Illinois.

8. Defendant, Patrick Kakos, is a citizen of the state of Michigan. For all relevant factual allegations in this Complaint, Mr. Kakos was employed in management and leadership roles by Prudential Protective, Prudential Security, and Prudential Defense. Mr. Kakos holds the majority of Prudential Defense's shares, holds all director and officer positions for Prudential Defense, and manages Prudential Protective's and Prudential Security's ongoing operations in the Chicago-area and throughout Illinois.

9. Defendant, Patricia Guzik, is a citizen of the state of Michigan. For all relevant factual allegations in this Complaint, Ms. Guzik had and/or has ownership interests and executive leadership roles in Prudential Defense, Prudential Security, and Prudential Protective. On information and belief, Ms. Guzik is the licensee-in-charge for Prudential Defense and Prudential Security in Illinois.

10. Defendant, Greg Wier is a citizen of the state of Michigan. For all relevant factual allegations in this Complaint, Mr. Wier had and/or has ownership interests and executive leadership roles in Prudential Protective, Prudential Security, and Prudential Defense.

11. Defendant, Matthew Keywell, is a citizen of the state of Michigan. For all relevant factual allegations in this Complaint, Mr. Keywell had and/or has ownership interests and executive leadership roles in Prudential Security, and Prudential Protective.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §1331 because Mr. Graham presents a federal question under the False Claims Act. This Court has supplemental jurisdiction over Mr. Graham's remaining state law claims pursuant to 28 U.S.C. §1367 because these claims form the same controversy as Mr. Graham's federal claims.

13. Venue is proper because all actions relevant to this Complaint took place at or through Defendants' office in Chicago, Illinois, which is in the geographic area served by this District.

## FACTS OF THE CASE

14. Jake W. Graham, Plaintiff, is a Detroit-area native. Mr. Graham pursued a finance degree before working over two decades in the hospitality industry. Mr. Graham's dedication to customer service and deliverables earned Mr. Graham the distinction of Finalist for the industry's highest award. Immediately thereafter, Defendants gave Mr. Graham the

opportunity to bring his skillset to the unique challenges of on-site security guard services industry.

15. Defendants Prudential Protective, Prudential Security, and Prudential Defense provide on-site security guard and mobile patrol services for businesses, school districts, government agencies throughout the United States.

16. Mr. Graham began employment with Prudential Protective and Prudential Security in its Southfield, Michigan office as a Project Manager and Salesman, in December 2012. [1]

17. Prudential Protective and Prudential Security tasked Mr. Graham with developing client relationships, procuring contracts, and expanding Defendant Prudential Protective's and Prudential Security's market share of security guard services within the private and public sectors.

18. Prudential Protective and Prudential Security operated out of the same principal place of business, performed the same core business functions, used the same trainers, and in all relevant respects were indistinguishable from each other. The company logos and the security guard uniform patches worn by Prudential Protective and Prudential Security employees were nearly identical.

19. Mr. Graham reported to Defendants Greg Wier and Matthew Keywell.

20. In 2013, Defendants relocated Mr. Graham to Chicago, Illinois, and named Mr. Graham Branch Manager in the fledgling Chicago office. Mr. Graham was tasked with expanding and overseeing Prudential Protective's and Prudential Security's operations in the Chicago area.

---

[1] Prudential Defense was not formed until October 2018, and is not a factor in this Complaint's narrative until paragraph 38, below.

21. Mr. Graham hit the ground running. Mr. Graham secured new business throughout the Chicago area, grew the Chicago office from sixteen to hundreds of employees, and greatly expanded the number of clients. The once-struggling Chicago office became a profit center for Prudential Protective and Prudential Security under Mr. Graham's leadership.

22. In 2014, the Prisoner Operations Division of the United States Marshals Service ("USMS"), a bureau of the United States Department of Justice, began soliciting bids to outsource prisoner transportation, transfer, and guard services for federal prisoners.

23. Mr. Graham believed this an excellent fit for Defendants. Thus began Mr. Graham's five-year endeavor—in addition to his other duties—to procure for Defendants a national contract with USMS to provide federal prisoner transportation and guard services.

24. On August 3, 2016, the Sixth Circuit, U.S. Court of Appeals, affirmed a jury verdict holding Prudential Protective liable for approximately $151,000.00 in damages suffered by a former employee, caused by Prudential Protective's violations of the Family Medical Leave Act, 29 U.S.C. §2601 *et seq.*[2]

25. Prudential Protective was dissolved shortly thereafter, on information and belief, prior to paying the judgment against it.

26. Neither Mr. Graham's job duties, nor the nature of his employment relationship, changed when Prudential Protective was dissolved.

27. Defendants' dissolution of Prudential Protective soon became a problem, however, due to Mr. Graham's pending bid for the USMS national contract.

---

[2] See, *Clements v. Prudential Protective Services, LLC*, 659 F. App'x. 820 (6th Cir. Aug. 3, 2016) (affirming *Clements v. Prudential Protective Services, LLC*, 100 F. Supp. 3d 604 (E.D. Mich. 2015).

28. Businesses seeking to provide U.S. government services pursuant to a contract endure a two-stage approval process.

29. First, U.S. General Services Administration ("GSA") must approve the business as a vendor under any one of the many categories of federal procurement, called "schedules," in government parlance. Receiving GSA vendor approval typically takes one year. Approved vendors receive a GSA number.

30. Second, GSA vendors bid for specific contracts with individual federal agencies seeking to outsource services. This stage can take several years, depending on the agency and level of competition for a contract.

31. Prudential Protective had long ago completed stage one, and was a GSA vendor with a GSA number. Mr. Graham had been pursuing the USMS national contract under Prudential Protective's Schedule 84 GSA number.[3]

32. Prudential Security had never applied for, nor secured status as a GSA vendor.

33. Prudential Protective's sudden dissolution left Mr. Graham without a GSA number under which to pursue the national USMS bid.

34. GSA numbers are not transferrable to successor or affiliate entities.

35. Mr. Graham's only option was to abandon the current bid (and years of work), initiate the one-year process to get Prudential Security its own GSA number, and hope USMS did not award the $56 million national security guard contract to another vendor in the interim.

36. This option was untenable to all involved. Rather than lose valuable ground, Defendants reinstated Prudential Protective in late 2017.

37. Mr. Graham's efforts to secure the USMS national contract continued without interruption.

---

[3] Prudential Protective Services, LLC, GSA Schedule 84 contract holder, GS-07145BA.

38. In October 2018, Patrick Kakos, Prudential Security's Director of Operations, and Patricia Guzik, an officer of Prudential Protective and a managing partner of Prudential Security, incorporated Prudential Defense, in Monroe, Michigan.

39. Prudential Defense also provided on-site security guard services for private and public clients, just like Prudential Protective and Prudential Security.

40. On January 17, 2019, Mr. Kakos and Ms. Guzik met with Mr. Graham in a casino in Battle Creek, Michigan, to announce an upcoming restructuring.

41. According to Mr. Kakos and Ms. Guzik, Prudential Defense was taking over the Chicago office of Prudential Protective and Prudential Security, starting March 1, 2019.

42. Mr. Kakos and Ms. Guzik told Mr. Graham his job duties and compensation would remain the same, that Mr. Graham would now have the title "Vice President," and that Mr. Graham would report primarily to Mr. Kakos and Ms. Guzik.

43. On or about March 1, 2019, Mr. Graham and the Chicago employees began reporting to Mr. Kakos and Ms. Guzik.

44. Prudential Security and Prudential Protective did not vacate Illinois, however. Prudential Security and Prudential Protective still had contracts in their respective names Illinois, and still received payments under these contracts. Mr. Graham continued to manage these contracts as he had before, which included frequent contact with Mr. Wier and Mr. Keywell.

45. In August 2019, Mr. Graham's efforts to win the USMS national contract succeeded at last.

46. Prudential Protective won the $56 million, five-year Blanket Purchase Agreement ("BPA") with USMS (the "USMS national contract"), to provide federal prisoner transportation and guard services nationwide.

47. It was, and is, the largest contract in Defendants' collective history.

7

48. Mr. Kakos and Mr. Graham, and additional employees in the Chicago office would manage the contract.

49. Within a month, Mr. Graham learned Prudential Protective intended to disregard key terms in the contract, including engaging in invoicing practices that appeared to cause USMS to pay Prudential Protective for services not rendered.

50. Mr. Graham thought it was a misunderstanding at first. Mr. Graham was quickly disabused of this idea, and was very upset. Mr. Graham and Mr. Kakos had several huge arguments about contract compliance before Prudential Protective's first invoice was due to USMS on October 1, 2019.

51. Mr. Kakos responded by removing Mr. Graham from invoicing responsibilities for the USMS national contract.

52. Mr. Graham continued servicing and implementing other aspects of the USMS contract.

53. Between mid-September 2019 and mid-June 2020, Mr. Graham argued regularly with Mr. Kakos about the USMS contract. Mr. Graham told Mr. Kakos on multiple occasions that he was worried about civil or criminal penalties.

54. By January 1, 2020, Mr. Graham began exploring an exit from Defendants' direct employ, due to these disagreements.

55. Throughout his employment with Defendants, Mr. Graham witnessed many employees of Defendants Prudential Protective and Prudential Security forming subcontracting agencies to handle jobs too small for Defendants Prudential Security, Prudential Protective, and Prudential Defense.

56. Mr. Graham thought this might be an option for him, and he began researching accordingly.

57. Mr. Graham discussed the subcontracting option with Mr. Kakos during the first quarter of 2020. Mr. Graham's announcement drew no concerns or opposition from Mr. Kakos. Mr. Kakos did not tell Mr. Graham that Mr. Graham could not become a subcontractor of Defendants.

58. In fact, in one of these conversations in early 2020, Mr. Kakos told Mr. Graham that Mr. Kakos was himself thinking about forming a partnership with a current Prudential Defense employee, for the purpose of handling smaller jobs for Prudential Defense.

59. Over the next couple of months, Mr. Graham looked into Illinois licensing requirements and talked to potential business partners, including co-worker and Prudential Defense Vice President, James Howard, about forming a business together.

60. In the meantime, the USMS national contract had begun to put a lot of money into the pockets of Mr. Kakos and Ms. Guzik. Mr. Kakos and Ms. Guzik—who share a young child together and are engaged to be married—purchased boats and luxury cars, went on high-roller casino trips, hired personal trainers and personal chefs, and went on elaborate vacations—including taking *thirty* family members on an all-expense paid cruise.

61. Mr. Kakos flaunted these expenses around the office. For example, everyone knew Mr. Kakos spent $20,000 to fly thirty family members to Florida for the aforementioned cruise in December 2019.

62. In March 2020, Covid-19 hit. Businesses and schools closed across the United States. The country went into quarantine in mid-March 2020. Millions upon millions of Americans had their incomes significantly reduced or eliminated as businesses shuttered.

63. The United States Congress passed the Coronavirus Aid, Relief, and Economic Stabilization Act ("CARES Act"), 15 U.S.C. §9001 *et seq*, to alleviate the immediate threat to the national economy.

64. One subsection of the legislation, the Paycheck Protection Program ("PPP"), 15 U.S.C. §631 *et seq*., allowed employers to receive forgivable loans if the employer met certain eligibility standards, and if the employer used the funds to keep employees on the job.

65. Defendants Prudential Defense, Prudential Security, and Prudential Protective did not qualify for PPP loans.

66. Mr. Kakos was proud of the fact that the pandemic was not an immediate threat to Defendants' combined bottom line.

67. Despite Mr. Kakos's express admission to Mr. Graham, and on information and belief, to other employees, that Prudential Defense was "flush with cash," Prudential Defense applied for PPP funds.

68. The application was approved. Defendant Prudential Defense received $1.375 million in PPP funds in April or May 2020.

69. Mr. Kakos paid the assistant who finessed the PPP application a $10,000 bonus to reward her success.

70. PPP recipients were required to spend 60% of the money within eight weeks of receiving these funds by keeping employees on the job, earning their usual paychecks.

71. Prudential Defense struggled with this requirement because at that time, most of Prudential Defenses' employees were school security guards. When Covid-19 closed the schools in mid-March, the need for school security guards evaporated. No amount of PPP money could keep employees on jobs that no longer existed.

72. Prudential Defense was required to return the PPP money if it did not need it for payroll. *Business Loan Program Temporary Changes; Paycheck Protection Program—Second Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan,* 85 F.R. 31357 (May 26, 2020).

73. Prudential Defense did no such thing. "You'd have to be a sucker to turn down this money," as Mr. Kakos put it to Mr. Graham.

74. The solution was to disburse the $1.375 million through the payroll of *all three* Prudential companies named in this litigation, i.e., Prudential Protective, Prudential Security, and Prudential Defense. Therefore, "if the government [came] sniffing around" it would look as if people were kept on the job with the PPP money.

75. The USMS contract, and other smaller contracts, were now "pure profit," due to PPP money covering all payroll and expenses across the three companies. Mr. Kakos and Ms. Guzik bought a boat and a Mercedes-Benz G-Wagen that spring.

76. In the meantime, Mr. Graham and his colleagues were getting crushed by the workload of the USMS contract. Mr. Graham and his colleagues needed positions filled.

77. The good news was that the positions were funded by the USMS contract, and in fact, Prudential Protective had already received these funds.

78. The bad news was that Mr. Kakos and Ms. Guzik steadfastly refused to part with "the pure profit" paid by USMS for these additional employees. "I will kill anyone who comes between me and my family's money," was Mr. Kakos's position.

79. Frustration and burnout continued to build among Mr. Graham and his colleagues. Mr. Graham continued to explore getting out, or at least getting distance, from Mr. Kakos.

80. In late-May or early-June 2020, one co-worker of Mr. Graham's reached his limit. This co-worker asked Mr. Graham to help him talk to Mr. Kakos about filling positions in the USMS region under that co-worker's management.

81. Remembering the ongoing arguments with Mr. Kakos about contract compliance, and Mr. Kakos's and Ms. Guzik's newly-lavish lifestyle, Mr. Graham exploded.

82. "Talk to [Mr. Kakos]?! Are you kidding me?!" responded Mr. Graham. "There is no talking to [Mr. Kakos]! I've been fighting with him for MONTHS to hire people because we are dying [with too much work]. He doesn't f*cking care." Mr. Graham continued without waiting for a response, now yelling. "I've tried EVERYTHING. I've told him I am not going to JAIL because of what he's doing with the invoices. He says the government will never find out! They don't check, he says! He thinks he's so f*cking SMART! For MONTHS we've been fighting over this. I've hung up on him! You think anyone can TALK to him?! NO! I am DONE talking with [Mr. Kakos] and you know what?!? If [Mr. Kakos] doesn't stop ripping off the government, I'm going to turn his a** in! That's right! I will do it! I am going to come for 'his' money! That's the only thing he cares about. MONEY."

83. Mr. Graham and his co-worker had this conversation in person in Defendants' office in downtown Chicago, during work hours.

84. This same co-worker vacationed with Mr. Kakos and Ms. Guzik in Las Vegas shortly thereafter, on or about June 12-15, 2020.

85. On information and belief, this co-worker reported Mr. Graham's statements to Mr. Kakos and Ms. Guzik, and/or conveyed this information to other agents of some and/or all Defendants.

86. On information and belief, employees of Defendants who were in the suite at the time of Mr. Graham's outburst, heard and reported these remarks to some and/or all Defendants.

87. Shortly thereafter, On July 2, 2020, Ed Zatyracz, an employee of Mr. Wier's and Mr. Keywell's, terminated Mr. Graham's employment.

88. Mr. Zatyracz travelled to Chicago, from Michigan, specifically for the task.

89. Mr. Zatyracz told Mr. Graham that his employment was terminated because "his services [were] no longer required."

90. As Mr. Zatyracz delivered this news to Mr. Graham's in Defendants' Chicago office, a process server arrived and handed an envelope to Mr. Graham.

91. "Mr. Graham, you've been served!" said the process-server. The envelope contained a complaint and summons issued the day prior, by the U.S. District Court, Eastern District of Michigan. Defendant Prudential Defense had filed suit against Mr. Graham.[4]

92. Federal Rule of Civil Procedure 4(d) requires defendants in civil suits to waive personal service of process, accept service by U.S. Mail, and pay all costs and fees—including attorneys' fees— if they refuse to waive without good cause.

93. Defendant ignored the Federal Rules' requirement that Mr. Graham accept service by U.S. Mail, and instead chose the expense and theatrics of personally serving Mr. Graham in front of his colleagues, at the time of his sudden termination, to embarrass and harass Mr. Graham, and create a chilling effect among Defendants' remaining employees to dissuade them from attempting to stop or report any reasonable perceptions of intentional illegalities in Defendants' operations or business practices.

94. The lawsuit served upon Mr. Graham, referenced above, alleges meritless causes of action against Mr. Graham and two business associates of Mr. Graham, based, in part, upon violations

---

[4] See, *Prudential Defense Solutions, Inc. v. Graham, et al*, Case No. 3:20-cv-11785-RHC-EAS (E.D. Mich.) (initiated July 1, 2020).

of a non-compete agreement of which Mr. Graham was entirely unaware before it was attached to the lawsuit. The matter is in active litigation at this time.

95. In addition to bringing a federal lawsuit against Mr. Graham, Defendants denied Mr. Graham earned commissions and wages upon termination.

96. As a result of Mr. Graham's termination, Mr. Graham suffered lost wages and compensation, and other damages.

## **Alter Ego Liability**

97. Defendants Prudential Defense, Prudential Security, and Prudential Protective are corporate alter egos of each other, for reasons including but not limited to the following:

   a. Defendants Kakos, Guzik, Wier, and Keywell hold leadership, director, and/or ownership positions in all three named corporate defendants across countless state registrations of these entities across the country, and have done so for many years;

   b. Defendant Guzik is, on information and belief, licensee-in-charge for Defendants Prudential Defense and Prudential Security in Illinois, is licensee-in-charge for Prudential Protective in Michigan, and is a managing partner of Prudential Security;

   c. In Michigan, on information and belief, Mr. Keywell is the licensee-in-charge for Prudential Security, and Mr. Kakos is the licensee-in-charge for Prudential Defense;

   d. Mr. Kakos is the Vice President of Prudential Defense, and Operations Manager of Prudential Security;

   e. Defendants Wier, Keywell, and Guzik incorporate Prudential Protective in Michigan in 2017;

   f. Mr. Wier and Mr. Keywell hold officer positions in Prudential Security in Michigan;

14

g. Prudential Defense and Prudential Security manage, operate, and otherwise fulfill the contract terms of the USMS national contract for Prudential Protective, to provide federal prisoner transport and guard services in Illinois and in other states;

h. Prudential Defense holds itself out to the public as a GSA Schedule 84 contract holder, using the GSA Schedule 84 contract number held by Prudential Protective;

i. Prudential Protective is a GSA Schedule 84 contract holder with a five-year, $56 million BPA to provide services to the USMS, yet it does not have a website and employees use their personal email addresses to conduct business pursuant to that BPA;

j. Mr. Kakos uses Prudential Defense contact information—including his Prudential Defense email address—on the GSA website for the Prudential Protective BPA;

k. Prudential Security and Prudential Defense jointly manage, and jointly profit from, contracts for security guard services in the Chicago area which are in Prudential Security's name;

l. PPP funds received by Prudential Defense paid payroll for Prudential Defense, Prudential Security, and Prudential Protective;

m. Prudential Security manages the payroll for a municipal contract in the Chicago-area managed by Prudential Defense because, in part, Prudential Defense does not have the financial resources to do so, and because Prudential Security is the vendor on the contract;

n. Prudential Security seamlessly assumed management of Prudential Protective's employees, contracts, and assets when Prudential Protective was dissolved in 2016;

o. Prudential Protective instantly resumed these operations when reinstated ten months later;

p.  Prudential Security holds out Prudential Protective employees and operations as its own, and has done so for years;

q.  Prudential Protective, Prudential Security, and Prudential Defense share corporate attorneys;

r.  Defendants Kakos, Guzik, Wier, and Keywell have worked with and for each other for many years, are personal friends, and together own and operate corporate entities not named in this action;

s.  An employee of Mr. Wier and Mr. Keywell terminated Mr. Graham on July 2, 2020; and,

t.  On information and belief, Defendants Prudential Protective, Prudential Security, and Prudential Defense engage in many other practices to manage, operate, and profit from each other's operations.

### COUNT I: False Claims Act Retaliation
### Against Defendants Prudential Protective Services, LLC
### Prudential Security, Inc., and Prudential Defense Solutions, Inc.

98. Mr. Graham performed his job duties at or above his employers' reasonable expectations for all times relevant to this Complaint.

99. Mr. Graham's actions as described in the foregoing—including, but not limited to, telling an upper-management employee of Prudential Defense that Mr. Graham would report Prudential Protective's potentially unlawful invoicing practices to the federal government—constituted protected activity under the anti-retaliation provision of the False Claims Act. 31 U.S.C. §3730(h).

100.   Defendant Prudential Protective had knowledge of this protected activity because Mr. Graham told an agent of Defendant Prudential Defense, who on information and belief relayed this information to Mr. Kakos and Ms. Guzik.

101.   Defendant Prudential Protective had knowledge of this protected activity because Mr. Graham made known his frustrations and his intention to report Defendants' wrongdoing, to colleagues in Defendants' Chicago office, who on information and belief caused this information to be relayed to Prudential Protective.

102.   Defendant Prudential Protective, together with Prudential Defense, terminated Mr. Graham's employment in retaliation for Mr. Graham's protected activity.

103.   Defendant Prudential Security, together with Prudential Protective and Prudential Defense, terminated Mr. Graham's employment in retaliation for Mr. Graham's protected activity, and participated in the act of publicly humiliating Mr. Graham, and instilling fear in Defendants' employees, by having Mr. Graham personally served in front of colleagues and associates at the time of his termination, with a lawsuit for which the Federal Rules make personal service unnecessary.

104.   Defendant Prudential Defense filed suit against Mr. Graham prior to terminating Mr. Graham's employment in retaliation for Mr. Graham's promise to expose Defendants' unlawful behavior to the U.S. government, thereby costing Mr. Graham a tremendous amount of money, effort, and stress to defend his interests.

105.   Defendants Prudential Defense, Prudential Protective, and Prudential Security denied Mr. Graham earned wages and compensation in retaliation for Mr. Graham's protected activity.

106.    Additionally, Mr. Graham has suffered lost wages and benefits since his termination, continues to suffer extreme stress, embarrassment, and humiliation as a result of his termination, and has had his professional reputation harmed.

***Wherefore,*** Plaintiff prays for the following relief:

A.    That the Court enter a judgment in his favor and against Defendants;

B.    That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

C.    That the Court order Defendants to reinstate Plaintiff and reimburse him for all back pay and other benefits that he would have received but for Defendants' conduct;

D.    That the Court award Plaintiff all earned and unpaid wages and commissions;

E.    That the Court award liquidated damages in the amount allowed by statute;

F.    That the Court award Plaintiff any and all compensatory damages to which he may be entitled;

G.    That the Court award Plaintiff any and all punitive damages to which he may be entitled, and to deter Defendants from engaging in unlawful conduct in the future;

H.    That the Court award Plaintiff prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

I.    That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

J.    That the Court award any other such amounts as the Court deems fit.

**<u>COUNT II: Illinois Whistleblower Act, 740 ILCS 174/15-20.1</u>**
**<u>Against Defendants Prudential Protective Services, LLC</u>**
**<u>Prudential Security, Inc., and Prudential Defense Solutions, Inc.,</u>**
**<u>and Patrick Kakos</u>**

107.    Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

18

108. Mr. Graham performed his job duties at or above his employers' reasonable expectations for all times relevant to this Complaint.

109. The Illinois Whistleblower Act prohibits retaliation against Illinois employees who report, or attempt to report, unlawful activity committed by their employers. 740 ILCS 174/15-20.1.

110. The United States Criminal Code prohibits, in part: deceptive practices aimed at impeding the legitimate functions of government, 18 USC §1001 *et seq.*; the use of interstate electronic communications to engage in these deceptive practices, 18 U.S.C. §1343; and indirect participation in an "enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. 1962(c).

111. Mr. Graham regularly argued with Mr. Kakos about conduct which Mr. Graham had reasonable cause to fear could cause him to "go[] to jail" under any of the aforementioned provisions of the U.S. Criminal Code.

112. Mr. Graham told a co-worker that Mr. Graham was going to report Defendants to the government for activities any reasonable employee would have cause to believe violated the aforementioned provisions of the U.S. Criminal Code.

113. Prudential Protective, Prudential Security, Prudential Defense, and Patrick Kakos terminated Mr. Graham's employment in retaliation for Mr. Graham reporting, and/or planning to report, potential criminal activity to law enforcement.

114. Prudential Protective, Prudential Security, Prudential Defense, and Patrick Kakos acted with retaliatory animus when they caused Mr. Graham to be sued in federal court on meritless charges, and caused Mr. Graham to be personally served with process in front of his colleagues, associates, and direct reports, at the time of his sudden termination, in order to embarrass and humiliate Mr. Graham and to instill fear in Defendants' remaining employees.

19

115.     As a result of Defendants' unlawful actions, Mr. Graham suffered lost wages, benefits, and commissions, was denied earned compensation, suffered extreme emotional distress and embarrassment, and had his professional reputation irreparably harmed.

**Wherefore,** Plaintiff prays for the following relief:

A.   That the Court enter a judgment in his favor and against Defendants;

B.   That the Court hold Defendants Prudential Protective, Prudential Security, Prudential Defense, and Patrick Kakos jointly and severally liable for all damages incurred by Plaintiff; and

C.   That the Court order Defendants to reinstate Plaintiff and reimburse him for all back pay and other benefits that he would have received but for Defendants' conduct;

D.   That the Court award Plaintiff all earned and unpaid wages and commissions;

E.   That the Court award Plaintiff any and all compensatory damages to which he may be entitled;

F.   That the Court award Plaintiff any and all punitive damages to which he may be entitled, and to deter Defendants from engaging in unlawful conduct in the future;

G.   That the Court award Plaintiff prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

H.   That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

I.   That the Court award any other such amounts as the Court deems fit.

<u>**COUNT III: Illinois Whistleblower Act, 740 ILCS 174/20-20.1**</u>
<u>**Against Defendants Prudential Protective Services, LLC,**</u>
<u>**Prudential Security, Inc., Prudential Defense Solutions, Inc.,**</u>
<u>**and Patrick Kakos**</u>

116.     Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

117.     Mr. Graham performed his job duties at or above his employers' reasonable expectations for all times relevant to this Complaint.

20

118. The Illinois Whistleblower Act protects employees from retaliation resulting from the employee's refusal to participate in unlawful acts committed by their employer. 740 ILCS 174/20.

119. The United States Criminal Code prohibits, in part: deceptive practices aimed at impeding the legitimate functions of government, 18 USC §1001 *et seq.*; the use of interstate electronic communications to engage in these deceptive practices, 18 U.S.C. §1343; and indirect participation in an "enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. 1962(c).

120. Mr. Graham expressly refused to engage in conduct that he had reasonable cause to believe violated the aforementioned U.S. Criminal Code.

121. Defendants had knowledge of this refusal, because Mr. Graham told Defendants of his refusal.

122. Defendants Prudential Protective, Prudential Security, Prudential Defense, and Patrick Kakos terminated Mr. Graham's employment in retaliation for Mr. Graham's refusal to participate in business practices that a reasonable person would believe violated the aforementioned U.S. Criminal Code provisions.

123. Prudential Protective, Prudential Security, Prudential Defense, and Patrick Kakos acted with retaliatory animus when they caused Mr. Graham to be sued in federal court on meritless charges, and caused Mr. Graham to be personally served with process in front of his colleagues, associates, and direct reports, at the time of his sudden termination, in order to embarrass and humiliate Mr. Graham and to instill fear in the remaining employees.

124.     As a result of Defendants' unlawful actions, Mr. Graham suffered lost wages, benefits, and commissions, was denied earned compensation, suffered extreme emotional distress and embarrassment, and had his professional reputation irreparably harmed.

**Wherefore,** Plaintiff prays for the following relief:

A.   That the Court enter a judgment in his favor and against Defendants;

B.   That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

C.   That the Court order Defendants to reinstate Plaintiff and reimburse him for all back pay and other benefits that he would have received but for Defendants' conduct;

D.   That the Court award Plaintiff all earned and unpaid wages and commissions;

E.   That the Court award Plaintiff any and all compensatory damages to which he may be entitled;

F.   That the Court award Plaintiff any and all punitive damages to which he may be entitled, and to deter Defendants from engaging in unlawful conduct in the future;

G.   That the Court award Plaintiff prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

H.   That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

I.   That the Court award any other such amounts as the Court deems fit.

**COUNT IV: Common Law Retaliatory Discharge**
**Against Defendants Prudential Protective Services, LLC,**
**Prudential Security, Inc., and Prudential Defense Solutions, Inc.**

125.     Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

126.     Mr. Graham performed his job duties at or above his employers' reasonable expectations for all times relevant to this Complaint.

127.   Mr. Graham's employment was terminated by Defendants on July 2, 2020.

128.   Defendants terminated Mr. Graham's employment in retaliation for reporting and/or planning to report to a government agency that he had reasonable cause to believe that Defendants' business practices violated federal law, including but not limited to the False Claims Act, 31 U.S.C. §3730, the criminal False Claims Act, 18 U.S.C. §1001 *et seq.,* the Wire Fraud Act, 18 U.S.C. §1343, and/or the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1962.

129.   Defendants' termination of Mr. Graham violates the clear mandate of Illinois public policy to encourage its citizens to report potentially civil violations and/or criminal activity that defrauds the U.S. government, and/or that relies upon understaffing security guard services responsible for transporting federal prisoners in public, between facilities.

130.   As a result of Defendants' actions, Mr. Graham lost wages and benefits, was denied earned compensation, suffered extreme stress and embarrassment, and suffered injuries to his professional reputation in his industry.

***Wherefore,*** Plaintiff prays for the following relief:

    A.   That the Court enter a judgment in his favor and against Defendants;

    B.   That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

    C.   That the Court order Defendants to reinstate Plaintiff and reimburse him for all back pay and other benefits that he would have received but for Defendants' conduct;

    D.   That the Court award Plaintiff all earned and unpaid wages and commissions;

    E.   That the Court award Plaintiff any and all compensatory damages to which he may be entitled;

F.  That the Court award Plaintiff any and all punitive damages to which he may be entitled, and to deter Defendants from engaging in unlawful conduct in the future;

G.  That the Court award Plaintiff prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

H.  That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

I.  That the Court award any other such amounts as the Court deems fit.

### COUNT V: Illinois Wage Payment and Collection Act
### Against Defendants Prudential Protective Services, LLC,
### Prudential Security, Inc., and Prudential Defense Solutions, Inc.

131.  Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

132.  Mr. Graham was an employee of employers Defendants Prudential Protective Services, LLC, Prudential Security, Inc., and Prudential Defense Solutions, Inc., for all times relevant to this complaint, pursuant to the Illinois Wage Payment and Collection Act ("Wage Payment Act." 820 ILCS 115/2.

133.  The parties agreed to a salary plus commission plan in exchange for Mr. Graham's employment.

134.  For the entirety of Mr. Graham's employment, Mr. Graham was improperly classified as an independent contractor and his earnings were reported on IRS Form-1099. Mr. Graham therefore paid federal and state taxes which should have been paid by his employers, Prudential Security, Prudential Protective, and Prudential Defense.

135.  The Wage Payment Act requires Illinois employers to pay employees all final compensation due and owing, "at the time of separation,…but in no case later than the next regularly schedule payday." 820 ILCS 115/5.

136.  At the time of his termination, Mr. Graham was owed earned wages and commissions.

24

137.    Defendants have not paid these amounts due and owing for work performed by Mr. Graham.

138.    Defendants' failure to pay Mr. Graham earned wages and commissions violates the Wage Payment Act. 820 ILCS 115/5.

***Wherefore,*** Plaintiff prays for the following relief:

    A.  That the Court enter a judgment in his favor;

    B.  That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

    C.  That the Court award Plaintiff all earned and unpaid wages and commissions;

    D.  That the Court award Plaintiff 2% per month statutory interest pursuant to the Illinois Wage Payment and Collection Act on any and all damages to which the Court finds that Plaintiff is entitled;

    E.  That the Court award Plaintiff all overpaid federal and state taxes from Plaintiff's hire to present, that Plaintiff paid on Defendants' behalf;

    F.  That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

    G.  That the Court award any other such amounts as the Court deems fit.

**COUNT VI: Illinois Wage Payment and Collection Act**
**Against Patrick Kakos, Patricia Guzik, Greg Wier, and Matthew Keywell**

139.    Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

140.    Mr. Graham was an employee of employers Defendants Prudential Protective Services, LLC, Prudential Security, Inc., and Prudential Defense Solutions, Inc., for all times relevant to this complaint, pursuant to the Illinois Wage Payment and Collection Act ("Wage Payment Act"). 820 ILCS 115/2.

141.    For the entirety of Mr. Graham's employment, Mr. Graham was improperly classified as an independent contractor and his earnings were reported on IRS Form-1099. Mr. Graham was assessed federal and state taxes which should have been paid by his employers, Prudential Security, Prudential Protective, and Prudential Defense.

142.    Defendants Kakos, Guzik, Wier, and Keywell are officers and/or agents of Prudential Protective Services, LLC, Prudential Security, Inc., and Prudential Defense Solutions, Inc., and held these positions at the time of Mr. Graham's termination.

143.    The Wage Payment Act requires Illinois employers to pay employees all final compensation due and owing, "at the time of separation,…but in no case later than the next regularly schedule payday." 820 ILCS 115/5.

144.    The Wage Payment Act imposes individual liability for unpaid wages and commissions on "any officers or a corporation or agents of an employer who knowingly permit such employer to violate the provisions of the Act." 820 ILCS 115/13.

145.    At the time of his termination, Mr. Graham was owed wages and commissions.

146.    Mr. Graham has not been paid these amounts due and owing for work performed.

147.    The named corporate Defendants' failure to pay Mr. Graham earned wages and commissions violates the Illinois Wage Payment and Collection Act.

148.    On information and belief, Defendants Kakos, Guzik, Wier, and/or Keywell knowingly permitted Defendants Prudential Protective, Prudential Security, and Prudential Defense to violate the Wage Payment Act.

149.    For this reason, Defendants Kakos, Guzik, Wier, and/or Keywell are liable to Mr. Graham for payment of all wages and commissions due and owing to Mr. Graham.

***Wherefore,*** Plaintiff prays for the following relief:

        H.  That the Court enter a judgment in his favor;

I.  That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

J.  That the Court hold Defendants Kakos, Guzik, Wier, and/or Keywell individually liable for all unpaid wages and commissions due and owing to Plaintiff;

K.  That the Court award Plaintiff all earned and unpaid wages and commissions;

L.  That the Court award Plaintiff statutory interest under the Illinois Wage Payment and Collection Act on any and all damages to which the Court finds that Plaintiff is entitled;

M.  That the Court award Plaintiff all overpaid federal and state taxes from Plaintiff's hire to present, that Plaintiff paid on Defendants' behalf;

N.  That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

O.  That the Court award any other such amounts as the Court deems fit.

**COUNT VII: Breach of Contract**
**Against Prudential Protective Services, LLC., Prudential Security, Inc.**
**And Prudential Defense Solutions, Inc.**

150.  Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

151.  At the time of Mr. Graham's hire by Defendants Prudential Security, Prudential Protective, Mr. Wier, and Mr. Keywell, the parties entered into an oral agreement whereby Mr. Graham was offered, and accepted, a specific salary and set commissions for sales procured for the Defendants listed in this paragraph.

152.  In January 2019, when Mr. Kakos and Ms. Guzik met with Mr. Graham in Battle Creek Michigan, as described in paragraph 39 of the foregoing, the terms of Mr. Graham's employment were affirmed.

153.    On March 6, 2019, Mr. Graham and Prudential Protective, by and through Mr. Kakos and Ms. Guzik, entered into a supplemental verbal agreement governing the commissions to be earned by Mr. Graham if Mr. Graham succeeded in procuring the aforementioned national contract with USMS for Prudential Protective.

154.    This verbal agreement was memorialized by email. *Email Correspondence between J. Graham and P. Kakos,* (Mar. 6, 2019, 06:55 p.m. and 07:07 p.m. CST), attached as Exhibit A.

155.    Mr. Graham successfully procured the aforementioned national USMS contract for Prudential Protective in August 2019. Prudential Protective began invoicing USMS on October 1, 2019, and USMS began paying Prudential Protective in accordance with said invoices within 30 days of receipt.

156.    Mr. Graham began receiving commission payments from Prudential Defense pursuant to the Prudential Protective's oral and written agreement regarding the aforementioned USMS national contract, in October 2019.

157.    Prudential Protective and Prudential Defense have not paid Mr. Graham earned commissions on the USMS contract, or any other contract, since June 2020.

158.    The failure to pay Mr. Graham earned commissions relating to the national USMS contract breaches the verbal and written agreements between the parties.

159.    Concurrently, Mr. Graham satisfied all conditions precedent to Mr. Graham receiving commissions promised by Defendants Prudential Protective, Prudential Security, Wier, and Keywell, for work procured before and after Mr. Graham procured the USMS contract.

160.    Mr. Graham remains unpaid for commissions related to these non-USMS national contract sales since June 2020.

161.    As a result of Prudential Protective's and Prudential Defense's breach of the parties' oral and written agreements related to the USMS national contract, Mr. Graham suffered lost income. These damages continue to accrue.

162.    As a result of Prudential Protective's, Prudential Defense's, and Prudential Security's breach of the parties' oral agreements related to contracts procured by Mr. Graham which do not include the USMS national contract, Mr. Graham suffered lost income. These damages continue to accrue.

**Wherefore,** Plaintiff prays for the following relief:

A.  That the Court enter a judgment in his favor against Prudential Protective;

B.  That the Court hold Defendants Prudential Protective, Prudential Security, and Prudential Defense, jointly and severally liable for all damages incurred by Plaintiff; and

C.  That the Court award Plaintiff all earned and unpaid wages and commissions;

D.  That the Court award Plaintiff all commissions earned but due and owing in the future, by agreement;

E.  That the Court award Plaintiff all compensatory damages for lost employment benefits, emotional distress, embarrassment, and professional harm;

F.  That the Court award Plaintiff punitive damages to deter Defendants from engaging in similarly unlawful actions in the future;

G.  That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

H.  That the Court award any other such amounts as the Court deems fit.

### COUNT VIII: Tortious Interference With A Contract
### Against Patrick Kakos and Patricia Guzik

163.    Plaintiff restates and realleges paragraphs 1 through 97, and incorporates these paragraphs herein.

164.    Plaintiff restates and realleges paragraphs 151 through 159, and incorporates these paragraphs herein.

165.   Mr. Graham had an enforceable oral and written contract with Defendant Prudential Protective, Prudential Defense, and Prudential Security with regard to Mr. Graham's procurement of the USMS national contract, and other contracts.

166.   Defendants Kakos and Guzik had knowledge of the USMS national contract because Defendants Kakos and Guzik negotiated and entered into the binding agreement with Mr. Graham on March 6, 2019, as agents of Prudential Protective, Prudential Defense and Prudential Security, and assented to the written agreement memorializing the oral agreement between the parties, which is attached as Exhibit A.

167.   On July 2, 2020, on information and belief, Defendants Kakos and Guzik induced Prudential Protective, Prudential Security, and Prudential Defense to terminate Mr. Graham's employment, and in June 2020, induced Prudential Protective and Prudential Defense to deny Mr. Graham earned and contractually-binding commission payments.

168.   Prudential Protective and Prudential Defense breached, and continue to breach, the binding agreement between the parties to pay Mr. Graham an agreed-upon commission for Mr. Graham's work on the USMS national contract, as a result of Defendants' Kakos and Guzik's unlawful actions.

169.   As a result of Defendants Kakos's and Guzik's actions, Mr. Graham has suffered lost wages and other compensation. These damages continue to accrue.

***Wherefore,*** Plaintiff prays for the following relief:

        A.  That the Court enter a judgment in his favor against Defendants Kakos and Guzik;

        B.  That the Court award Plaintiff all earned and unpaid wages and commissions pursuant to the oral agreements with Prudential Protective and Prudential Security;

C. That the Court award Plaintiff all commissions earned but due and owing in the future, by agreement with Prudential Protective and Prudential Defense, as these commissions relate to the USMS national contract;

D. That the Court award Plaintiff all compensatory damages for lost employment benefits, emotional distress, embarrassment, and professional harm;

E. That the Court award Plaintiff punitive damages to deter Defendants from engaging in similarly unlawful actions in the future;

F. That the Court award Plaintiff all costs and reasonable attorneys' fees incurred as a result of this action; and

G. That the Court award any other such amounts as the Court deems fit.

## **Jury Demand**

170. Mr. Graham demands a trial by jury for all counts.

Respectfully submitted,
Plaintiff,
Jake W. Graham,

By: _____
One of his attorneys

Lisa M. Stauff
Law Offices of Lisa M. Stauff
53 W. Jackson Blvd., Suite 624
Chicago, Illinois 60604
(312) 212-1036
LStauff@StauffLaw.com

John A. Krupa
Illinois Justice Center, Inc.
The Law Offices of John A. Krupa & Associates
195 W. Joe Orr Road., Suite 200
Chicago Heights, Illinois 60411
(708) 799-4444
jkrupa@krupalaw.com